FILED - GR
December 17, 2007 2:12 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: /s/

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Sheri Kelly,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) Hon. ) | **1:07-cv-1257** |
| **Financial Credit Service, Inc.,** an Illinois corporation, | ) ) ) ) | Robert Holmes Bell Chief U.S. District Judge |
| Defendant. | ) ) ) | |

**Complaint**

**I.    Introduction**

1. This is an action for damages and declaratory relief, brought by a consumer against a debt collector for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

2. Defendant Financial Credit Service, Inc. ("FCS") is in the business of purchasing delinquent and time-barred consumer debt for a few pennies (or less) on the dollar. FCS and its employees attempt to collect the debt through abusive, deceptive and unfair practices, in violation of the FDCPA and MCPA. Among other things, FCS attempts to coerce payment of uncollectible debt by threatening the consumer with litigation (even though any lawsuit would be barred by the applicable statute of limitations) and by falsely stating that derogatory account information will appear and remain on the consumer's credit report until the debt is paid (even though it would be unlawful to report such information because of the passage of time). Plaintiff

Sheri Kelly is a victim of defendant's unlawful debt collection practices.

## II. Jurisdiction

3. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA). This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

## III. Parties

4. Plaintiff Sheri Kelly, formerly known as Sheri Maleport, is a natural person residing in Allegan County, Michigan. Ms. Kelly is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Kelly is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA.

5. Defendant Financial Credit Service, Inc. is an Illinois corporation. FCS receives mail at P.O. Box 1211 Palatine, Illinois 60078-1211. According to the records of the Illinois Secretary of State, the registered agent for FCS is David Schultz, 222 North LaSalle, Suite 300, Chicago, Illinois 60601. FCS is a "debt collector" under the FDCPA. FCS is a "collection agency" and a "licensee" under the MCPA.

## IV. Facts

6. Approximately twenty years ago, Ms. Kelly (then, Sheri "Maleport") opened a credit card account (No. 4387108840335836) with Credit Card Services Bureau ("CCSB"). Ms. Kelly used the account to purchase goods and/or services for personal, family or household purposes and incurred a "debt." The debt was a "debt" as the term is defined and used in the FDCPA and MCPA.

7. In 1989, Ms. Kelly became hospitalized for approximately one year and became unable to pay the debt. In 1989, Ms. Kelly defaulted on her obligation to pay the debt. CCSB closed Ms. Kelly's account in or about 1989. At no time from January 1, 1990 to the present did Ms. Kelly use the CCSB account for any purpose whatsoever. At no time from January 1, 1990 to the present did Ms. Kelly or anyone else make any payment whatsoever on the debt. Ms. Kelly has been in default on her obligation to pay the debt at all times since January 1, 1990 or earlier.

8. For more than a decade, the debt has been judicially unenforceable by operation of the applicable statute of limitations. Stated differently, the debt has been time-barred for more than ten years.

9. FCS claims to have purchased the debt in or about December of 2004. FCS purchased the debt after Ms. Kelly had defaulted on her obligation to pay the debt.

10. By letter dated October 19, 2007, FCS wrote Ms. Kelly and demanded that she pay the debt and stated in part, "FCS understands that most people want to pay their bills, but sometimes unforeseen circumstances can interfere with your good intentions. As a result, your credit and even your good name may suffer. . . . Once [the debt is] settled, you'll receive ARTICLES OF RESOLUTION including your PAID IN FULL LETTER indicating that the account is paid and releasing you from further liability. This letter can be sent to any credit bureau lender as proof that the debt is resolved." A copy of the letter is attached hereto as Exhibit A.

11. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, states that no consumer reporting agency may make any consumer report containing information regarding "accounts

3

placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

12. The debt which FCS attempted to collect from Ms. Kelly was placed for collection or charged to profit and loss more than fifteen years ago. Accordingly, no consumer reporting agency may make a consumer report containing information regarding the debt.

13. FCS falsely represented or implied in Exhibit A that the unpaid debt was adversely affecting Ms. Kelly's credit and/or could adversely affect Ms. Kelly's credit.

14. FCS falsely represented or implied in Exhibit A that if Ms. Kelly paid money to FCS, then FCS would provide a letter indicating that FCS was "releasing" Ms. Kelly "from further liability." The representation or implication was false because Ms. Kelly simply had no "liability" to pay the time-barred debt. Stated differently, there was no "further liability" for FCS to release.

15. Upon information and belief, Exhibit A is a form letter, sent by FCS to hundreds (and perhaps thousands) of consumers, in efforts to collect time-barred debts.

16. On or about December 13, 2007, Ms. Kelly spoke by telephone with a female FCS employee. Ms. Kelly asked for information regarding the letter she had received from FCS. The FCS employee falsely stated to Ms. Kelly that there was a case filed against Ms. Kelly in Allegan County, and that FCS has submitted an affidavit in the case to obtain a judgment against Ms. Kelly and to put lien on Ms. Kelly's property. The FCS employee then transferred Ms. Kelly to

another FCS employee identified as "Ms. Covington."

17. On or about December 13, 2007, Ms. Kelly spoke by telephone with a FCS employee identified as Ms. Covington. In the ensuing conversation, the FCS employee made the following statements:

a) FCS had filed a claim against Ms. Kelly in Allegan County.

b) The account which FCS was collecting was opened in the 1980's and closed in the early 1990's.

c) A judgment was scheduled to be filed against Ms. Kelly.

d) The debt was scheduled to go back on Ms. Kelly's credit report as a judgment.

e) Derogatory information regarding the debt would remain on Ms. Kelly's credit report forever, unless the debt is paid.

f) Interest and late fees would continue to accrue on the account until the debt is paid.

g) If Ms. Kelly disputed the debt, then derogatory information regarding the debt would be placed back on Ms. Kelly's credit report.

h) Ms. Kelly no longer had the right to dispute the debt.

i) Because of the passage of time, Ms. Kelly had the burden of proving that she did not owe the debt.

k) Because Ms. Kelly was disputing the debt, FCS that day would be adding a fee of $1,800.00 or more to the account, increasing the alleged balance from $2,141.00 to $3,941.00 or more.

l) A judgment had gone out against Ms. Kelly.

    m)      FCS was placing a lien against Ms. Kelly's home.

    n)      That FCS was aware that Ms. Kelly earlier had filed a Chapter 7 Bankruptcy, but that FCS intended to collect the debt regardless of the bankruptcy.

    o)      FCS attorneys would place the debt on Ms. Kelly's credit report and take action against Ms. Kelly.

18.      The statements made by FCS and its employees as outlined in the preceding paragraphs were false, deceptive, misleading, unfair, unconscionable, harassing, oppressive and/or abusive.

19.      FCS has never filed a lawsuit against Ms. Kelly to collect the debt.

20.      FCS has never filed a lawsuit in the State of Michigan against any consumer to collect a consumer debt.

21.      Defendant's unlawful debt collection methods, acts and practices were willful. Defendant's violations of the FDCPA and MCPA were willful.

22.      As an actual and proximate result of defendant's acts and omissions, Ms. Kelly has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

### V. Claims for Relief

#### Count 1– Fair Debt Collection Practices Act

23.      Plaintiff incorporates the foregoing paragraphs by reference.

24.      Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt.

    b)    Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

    c)    Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

    d)    A declaration that defendant's practices violate the FDCPA; and

    e)    Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

25.    Plaintiff incorporates the foregoing paragraphs by reference.

26.    Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

    a)    Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)    Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or

threatened; (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the seizure, garnishment, attachment, or sale of the debtor's property; and

c)  Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)  Actual damages pursuant to M.C.L. § 339.916(2);

b)  Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)  Statutory damages pursuant to M.C.L. § 339.916(2); and

d)  Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 17, 2007

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503
(616) 776-1176
ConsumerLawyer@aol.com